Filed 8/30/13  In re J.R. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re J.R., a Person Coming Under the Juvenile Court Law. | D063639 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ012847) |
| v. | |
| A.G. et al., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Reversed.

Donna B. Kaiser, under appointment by the Court of Appeal for, Defendant and Appellant A.G.

Cristina Gabrielidis, under appointment by the Court of Appeal for, Defendant and Appellant Miguel R.

Thomas E. Montgomery, County Counsel, John E. Phillips, Chief Deputy County Counsel, and Caitlin E. Rae, Deputy County Counsel, for Plaintiff and Respondent.

A.G. and Miguel R., both residents of Mexico, appeal a judgment declaring their minor daughter, J.R., a dependent of the juvenile court and removing her from parental custody. A.G. and Miguel contend the court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.)[1] because Mexico was J.R.'s home state and it had not declined jurisdiction. Miguel also contends: (1) the court should have conducted a hearing to determine if it could exercise temporary emergency jurisdiction under section 3424; (2) the evidence was insufficient to support the court's dispositional order removing J.R. from Miguel; and (3) the court erred in finding there were no reasonable alternatives to removal.

We conclude the court erred by determining that the UCCJEA does not apply to this case. The UCCJEA governs the jurisdictional analysis the court is required to undertake. Therefore, we reverse and remand with instructions for the court to conduct a hearing on the issue of subject matter jurisdiction and/or temporary emergency jurisdiction.

---

[1] Further statutory references are to the Family Code unless otherwise specified.

2

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Arrest and Detention*

In December 2012 Immigration and Customs Enforcement agents arrested A.G. at the San Ysidro port of entry after finding cocaine in the dashboard of the car in which A.G. was travelling as a passenger.  A.G. denies being aware of the drugs in the car or that the driver of the car was involved in drug trafficking.  She claims she was coming to the United States to run errands and accepted a ride from a friend.  She remains incarcerated in a federal correctional facility in San Diego with charges pending.

Four-year-old J.R., who was in the car when her mother was arrested, was taken into protective custody in San Diego.  The San Diego County Health and Human Services Agency (Agency) filed a petition in the juvenile court under Welfare and Institutions Code section 300, subdivision (b) alleging that J.R. was inadequately attended and supervised and that there is a substantial risk the child will suffer serious physical harm or illness.  The court detained J.R. in out-of-home care.

B.      *Concerns Regarding Father's Home in Mexico*

J.R.'s father, Miguel, lives in Rosarito, Mexico with J.R.'s older sister and cannot cross the border.  Homeland Security agents suspected Miguel was the owner of the drugs.  Miguel denies involvement with drug smuggling.  Miguel sold his car to his friend two weeks earlier and knew that the same friend gave A.G. a ride, but reportedly had no concerns that his friend might be involved in illegal activity.

J.R. reported to the social worker that her parents fight a lot with "angry hands" and that they use bad words and do bad things to each other when they argue.  She also

3

reported that her father drinks a lot of beer and behaves badly when he is drunk. Other family members reported that they heard Miguel would hit A.G. and prevent her from doing things.

Both parents admit they argue and "play rough." A.G. stated that when they are playing like this, Miguel sometimes hits her a little too hard and they argue. While the stories are somewhat inconsistent, both parents acknowledge an incident several years ago in which an argument escalated out of control and Miguel slapped or shoved A.G. in front of the children. They separated for a short time as a result of this incident and Miguel moved to Mexico with the oldest daughter. Miguel and A.G. then reconciled and the family moved to Mexico. In a more recent incident, A.G. accidentally scratched J.R. during an exchange between A.G. and Miguel. A.G. called the police when she thought he was going to hit her. Miguel was taken before a judge in Mexico on charges of aggravated assault, but was later released without charges. The parents admit to alcohol use, but deny that it causes problems.

C.    *Initial Detention Hearing*

In the detention report, the Agency asserted that J.R. and her sister had been exposed to domestic violence between the parents and that J.R. was willingly placed in a high danger situation where she "was exposed to dangerous criminal activity, drug trafficking, where lethal violence is routine."

At the initial detention hearing, the court found a prima facie showing had been made that J.R. was a child described by Welfare and Institutions Code section 300,

4

subdivision (b).  Miguel, through appointed counsel, entered a general denial of the petition even though counsel indicated he had not received a copy of the petition.

D.      *Agency Raises Jurisdiction Issue*

In the jurisdiction/disposition report, the Agency raised the potential application of the UCCJEA, noting that the family has resided in Mexico off and on since May 2009 and continuously lived there for at least nine months before the arrest.  The report recommended that the juvenile court contact a judge in Mexico to discuss the issue and provided a name, address, direct telephone number and e-mail address.

The Agency reported it was unable to fully assess J.R.'s safety in Miguel's home because he lives in Rosarito, Mexico and "the Agency is unable to conduct a home evaluation."  The Agency requested the assistance of Mexican authorities in evaluating Miguel and his current living situation and "results are pending."  Miguel reported that he had not been contacted by Mexico's social services agency, el Sistema para el Desarrollo Integral de la Familia (DIF), but was provided with information so he could follow up.  Miguel also reported that he attempted to get information from the Mexican Consulate.

At the jurisdiction and disposition hearing, minor's counsel inquired if the court wished to address the UCCJEA issue.  The court asked A.G. if there were any pending custody or visitation orders or family court proceedings regarding J.R. in Mexico.  A.G. answered "no."

The court then stated, "I realize that home state is an issue, but the big issue with UCCJEA is to look at whether or not there's any other court that's established jurisdiction over this child.  [¶]  In this case there are no . . . family court proceedings . . . or any court

5

proceedings regarding the custody and visitation of [J.R.] in this case. And so without that, UCCJEA really does not apply." The minute order states that the UCCJEA does not apply.

At the settlement conference hearing, the Agency inquired about the application of the UCCJEA. The settlement conference judge reviewed the prior minute order and indicated it had been addressed and determined.

E.     *Reports of Complications With Services Through Mexican Social Services*

In an addendum report dated February 25, 2013, Miguel stated he was having difficulty dealing with DIF as he had not been referred to any classes or had an appointment for his home evaluation. He claimed he filled out forms and was asked to do an "on-demand drug test," but was not able to talk to anyone about the case. He expressed frustration that no one had explained his rights or referred him to classes. The Agency also reported it had not been able to schedule an in-person visit between J.R. and her father and sister because the visits must take place at the consulate and consulate visitation cannot be scheduled until the Agency receives J.R.'s birth certificate from Stanislaus County.

In a second addendum report, dated March 7, 2013, the Agency reported that Miguel went to DIF in January and was asked to do a drug test, but did not return the next day with the results and to sign the referral for services. According to this report, Miguel's first visit with J.R. was scheduled for March 11, 2013.

*F.     The Court Sustains the Allegations of the Petition*

The contested adjudication and disposition hearing involved A.G.'s trial on the truth of the petition and Miguel's trial on placement. During the hearing, the court received into evidence the Agency's reports as well as stipulated testimony from the social worker regarding a recent conversation with Miguel. According to the stipulated testimony, Miguel reported he made several attempts to contact DIF, but every time he went there he was told the social worker was not there. He asked that his case be transferred to DIF in Tijuana as he believed this would be easier and faster. Miguel also reported he did not know he had to submit the drug test results.

The court sustained the allegations of the petition by clear and convincing evidence under Welfare and Institutions Code section 300, subdivision (b). The court found that the statements regarding the sale of the car and the purpose for crossing the border were inconsistent. The court also found that A.G.'s placement in the car with her knees against the dashboard where the drugs were discovered supported jurisdiction.

The court denied Miguel's request for placement, stating it "would be . . . detriment[al] by clear and convincing evidence to place [J.R.] with [him]." The court found J.R. gave consistent statements about domestic violence in the home, drinking by Miguel, and Miguel's bad behavior when he was drunk, including arguing and fighting more with A.G. The court declared J.R. to be a dependent and ordered her placement in licensed foster care. The court ordered A.G. to comply with the case plan through services available in the facility where she is incarcerated and ordered Miguel to comply with his case plan through DIF.

7

DISCUSSION

I

*General Principles Governing Jurisdiction Under the UCCJEA*

"The exclusive method of determining subject matter jurisdiction in custody cases is the UCCJEA.  (§ 3421, subd. (b).)  Under the UCCJEA, a California court must 'treat a foreign country as if it were a state of the United States for the purpose of' determining jurisdiction.  (§ 3405, subd. (a).)"  (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 490.)

A dependency action is a " 'child custody proceeding' " subject to the UCCJEA. (§ 3402, subd. (d); see *In re Angel L.* (2008) 159 Cal.App.4th 1127, 1136.)  The goals of the UCCJEA include avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where the child and family have the closest connections, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of other states.  (*In re C. T.* (2002) 100 Cal.App.4th 101, 106.)

Subject matter jurisdiction either exists or does not exist at the time the action is commenced and cannot be conferred by stipulation, consent, waiver or estoppel.  (*In re A. C.* (2005) 130 Cal.App.4th 854, 860.)  Under section 3421, subdivision (a), California may assume jurisdiction to make an initial child custody determination only if any of four specified circumstances apply.

First, California is the child's "home state" on the date the proceeding commenced or was the home state of the child within six months before the proceeding commenced

8

and a parent continues to live in California if the child is absent from the state. (§ 3421, subd. (a)(1).) " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).)

Second, there is no home state or a court of the child's home state "has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum" and both of the following are true: the child and at least one parent have a "significant connection" to California other than mere physical presence and "substantial evidence" is available in California as to the child's care, protection, training and personal relationships. (§ 3421, subd. (a)(2).)

Third, all courts having jurisdiction under the prior two tests have declined to exercise jurisdiction on the ground California is the more appropriate forum. (§ 3421, subd. (a)(3).)

Fourth, no other state has jurisdiction under any of the foregoing tests. (§ 3421, subd. (a)(4).)

The only exception to these exclusive jurisdictional bases for making a child custody determination in California is if the court finds temporary emergency jurisdiction under section 3424. (§ 3421, subds. (a) & (b).) A court may exercise "temporary emergency jurisdiction" when a "child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse." (§ 3424, subd. (a).) An "emergency" exists when there is an

9

immediate risk of danger to the child if he or she is returned to a parent. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1174-1175.) Although temporary emergency jurisdiction is generally intended to be short term and limited, the juvenile court may continue to exercise its authority as long as the reasons underlying the dependency exist. (*Id.* at p. 1175; *In re Angel L.*, *supra*, 159 Cal.App.4th at p. 1139; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 312 [court had continuing jurisdiction because of emergency presented and impossibility of returning minor immediately to parents].)

However, if a court assumes temporary emergency jurisdiction, such jurisdiction is temporary in nature and the court must still take steps to determine whether it has a sufficient basis for jurisdiction under the UCCJEA before making a finding of dependency jurisdiction or a custody determination. (Seiser & Kumli, Cal. Juvenile Courts Practice & Procedure (2013) § 2.82[3] p. 2-238, citing *In re C. T.*, *supra*, 100 Cal.App.4th at p. 113 [when a court addresses the merits of a dependency petition after determining an emergency exists, it must assert jurisdiction under section 3421 or 3423, which are not emergency jurisdiction provisions].)

Section 3424, subdivision (b) allows temporary jurisdiction to ripen into permanent jurisdiction in limited circumstances. When "there is no previous child custody determination that is entitled to be enforced under the UCCJEA and a child custody proceeding has not been commenced in a court of a state having jurisdiction under the UCCJEA, a child custody determination made under [section 3424] remains in effect *until* an order is obtained from a court of a state having jurisdiction under the UCCJEA. *If a child custody proceeding has not been or is not commenced in a court of a*

10

*state having jurisdiction under the UCCJEA*, a child custody determination made under section 3424, subdivision (b), 'becomes a final determination, *if it so provides* and this state becomes the home state of the child.' " (*In re Angel L.*, *supra*, 159 Cal.App.4th at p. 1138, quoting § 3424, subd. (b), italics added.) In other words, the court retains emergency jurisdiction until an order is obtained from a court having jurisdiction. Alternatively, if the court issues a child custody order under temporary emergency jurisdiction, that order may become final if the order itself provides that it will become final *unless* a proceeding has been or is commenced in a court with jurisdiction.

II

*The Juvenile Court Erred in Ruling that the UCCJEA Does Not Apply and in Exercising Jurisdiction Without Contacting the Home State or Conducting an Evidentiary Hearing*

Here, the juvenile court erred in determining that the UCCJEA does not apply based only upon A.G.'s report that no family court or custody proceeding had previously been filed in Mexico. The court's analysis was incomplete.

The UCCJEA does apply and requires the juvenile court to undertake a jurisdictional analysis in accordance with principles outlined above. The evidence establishes that J.R.'s home state at the time this proceeding commenced was Mexico because she had resided in Mexico with both parents for more than six months before the petition was filed. (§ 3402, subd. (g).)[2] Therefore, California may not exercise jurisdiction under section 3421, subdivision (a)(1).

---

[2] The only exception to the general rule that a court of this state must treat a foreign country as if it were a state of the United States for purposes of the UCCJEA is " 'if the

11

The question then becomes whether California may exercise subject matter jurisdiction under one of the other tests outlined in section 3421 or if it may exercise temporary emergency jurisdiction under section 3424. Although we are not bound by a juvenile court's findings regarding subject matter jurisdiction and independently reweigh jurisdictional facts (*In re A. C.*, *supra*, 130 Cal.App.4th at p. 860), the record here does not allow us to fully assess the jurisdictional facts because there is no record of a hearing to determine such facts or of any effort by the juvenile court to contact a court in Mexico to determine if the Mexican court would decline jurisdiction.

Before a child custody determination is made under the UCCJEA, notice and an opportunity to be heard must be given to all persons entitled to notice under state law, any parent whose parental rights have not previously been terminated and any person having physical custody of the child. (§ 3425; *In re C. T.*, *supra*, 100 Cal.App.4th at p. 107, [a finding of emergency jurisdiction " 'should not be made "in a rush to judgment" but rather "after a full and fair evidentiary hearing." ' "].) Here, the juvenile court did not give the parties notice or an opportunity to be heard regarding the facts necessary to determine either fundamental subject matter jurisdiction under section 3421 or temporary emergency jurisdiction under section 3424.

The record shows that the Agency raised the issue of subject matter jurisdiction under the UCCJEA in its jurisdiction/disposition report where it noted that the family's

child custody law of [the] foreign country violates fundamental principles of human rights.' (§ 3405, subd. (c).) Nothing in the record here suggests the custody laws of Mexico in any way violate principles of human rights." (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1040, fn. 20.)

legal residence at the time of A.G.'s arrest was in Mexico and that Miguel and J.R.'s older sister continued to reside in Mexico. The Agency recommended that the juvenile court contact a judge in Mexico to discuss the issue, and provided a name, address, direct telephone number and e-mail address. There is, however, no evidence in the record that the juvenile court followed this recommendation.

The statutory scheme encourages communication between courts. "Section 3410 authorizes a California court to communicate 'with a court in another state concerning a proceeding arising under this part.' (§ 3410, subd. (a).) If the parties are not allowed to participate in the communication with the court of the other state, 'they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.' (§ 3410, subd. (b).) A record must be made of any communication under section 3410, other than administrative matters such as schedules, calendars, court records, and the parties must be promptly informed and provided access to the record. (§ 3410, subds. (c) & (d).)" (*Brewer v. Carter* (Aug. 16, 2013, B244767) ___ Cal.App.4th ___ [2013 Cal.App. LEXIS 659, *11].)

When a court of another state has issued an existing child custody order or there is a pending proceeding in another state, the UCCJEA makes clear that immediate communication with the other court is necessary. (§§ 3424, subd. (d), 3426, subd. (b).) However, even if a proceeding has not commenced in another jurisdiction, the plain language of the statutory scheme indicates it is prudent, if not mandatory, for a court to at least attempt communication with the home state forum.

13

Section 3421, subdivision (a)(2) allows California to exercise jurisdiction in certain circumstances if "a court of the home state of the child *has declined* to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 [inconvenient forum] or 3428 [declining jurisdiction based on unjustifiable conduct]." (Italics added.) Similarly, section 3421, subdivision (a)(3) allows California courts to exercise jurisdiction if "[a]ll courts having jurisdiction under paragraph (1) or (2) *have declined* to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child." (Italics added.) This language presumes that before California may proceed with a case where it is not the home state, the home state must have some notice and an opportunity to decline jurisdiction.

The record here gives no indication that the juvenile court gave either the Mexican court or the parties notice and an opportunity to be heard regarding whether Mexico or California is the most appropriate forum to make custody determinations regarding J.R. under the UCCJEA. It may be that after contact with the Mexican court, Mexico will decline jurisdiction on the ground that California is a more appropriate forum. It may be that, after a full and fair evidentiary hearing, the court will determine that California is not a convenient forum under section 3427 and decline to exercise jurisdiction, even if it finds a basis for jurisdiction.[3] (See *Brewer v. Carter*, *supra*, ___ Cal.App.4th ___ [2013

---

[3] Certain facts in the record suggest that California may not be the most appropriate forum because the Agency cannot independently evaluate the safety or the current living conditions of the father's home in Mexico. Evidence exists in Mexico regarding police

14

Cal.App. LEXIS 659, *11-14].) However, on remand, the court must give both the parties and the Mexican court notice and an opportunity to be heard, including the right to present evidence and cross-examine witnesses, on the issue of whether the juvenile court may exercise subject matter jurisdiction under the UCCJEA.

We agree with the Agency that J.R. was present in California for purposes of analyzing possible temporary emergency jurisdiction when she entered the United States at the San Ysidro port of entry. As the Agency points out, the evidence in this record shows that J.R. is a United States citizen having been born in California. As such, she had a right to cross the border. Because she was not an alien and was not the subject of official restraint with regard to her presence in California, the authorities cited by Miguel for the proposition that J.R. was not "present in" California for purposes of temporary jurisdiction are not applicable. (See *United States v. Zavala-Mendez* (9th Cir. 2005) 411 F.3d 1116, 1120-1121 ["An alien who crosses the border at a designated location and proceeds directly in the manner designated by the government to the border station where he then presents himself to the authorities has not been [illegally] 'found in' the United States for the purposes of 8 U.S.C. § 1326(a)"]; *United States v. Lombera-Valdovinos*

involvement in at least one prior domestic violence call. Additionally, evidence regarding Miguel's contacts with DIF exists in Mexico.

Alternatively, A.G. is currently incarcerated in California and can be made available for testimony in this country. Additionally, some of A.G.'s family members who have some information regarding the family's prior history also reside in California. Similarly, A.G.'s brother, who she requested the court evaluate for potential alternative placement, resides in California.

(9th Cir. 2005) 429 F.3d 927, 928-929 [discussing effect of official restraint of alien regarding whether defendant can be guilty of illegal reentry].)

However, on remand the juvenile court should conduct a further evidentiary hearing regarding whether the other elements necessary for emergency jurisdiction under the UCCJEA exist. We have previously held that under the UCCJEA a hearing to determine whether an emergency exists under section 3424 is separate and distinct from a hearing to determine if dependency jurisdiction exists under Welfare and Institutions Code section 300. (*In re C. T.*, *supra*, 100 Cal.App.4th at p. 109.) As we have explained, the purpose of a jurisdictional hearing under Welfare and Institutions Code section 300 to determine if the child is a person described within the statute is a condition precedent to a permanent custody disposition and has no time limits. (*In re C. T.*, *supra*, at p. 108.) In contrast, the purpose of a section 3424 hearing is limited to determining the existence of an emergency and emergency jurisdiction may be exercised only on a temporary basis. (*In re C. T.*, at p. 108.)

In some circumstances, material evidence presented at a hearing in which a court makes a true finding under Welfare and Institutions Code section 300, may duplicate in part the evidence the court would receive when determining whether an emergency exists. (*In re C. T.*, *supra*, 100 Cal.App.4th at p. 109.) However, because emergency jurisdiction under section 3424 is temporary in nature, the court here erred in entering a final adjudication and disposition without limitation or attempting to contact Mexico. Thus, on remand, the juvenile court is instructed to conduct a further hearing to determine if the elements necessary for temporary emergency jurisdiction continue to exist under

16

section 3424. If such jurisdiction exists, the court should identify a period of time or a specific date it considers adequate for either the parties or the Mexican court to commence proceedings. If no such proceedings are commenced within the time period identified after notice is provided to the parties and Mexico, the order should indicate that it will become a final determination and California will be deemed to be the home state. (§ 3424, subd. (b).)[4]

In light of our holding, we need not address Miguel's claims regarding the propriety of the court's disposition order.

---

[4] This case is factually distinct from *In re Jaheim B.* (2008) 169 Cal.App.4th 1343 where a mother of a two year old abandoned him in a California parking lot five months after moving to California while the child's father was incarcerated in Alabama. (*Id*. at pp. 1346-1347.) In that case, we held that the child had no home state because he did not live with a parent or person acting as a parent in California or Florida for at least six months before the dependency petition was filed. (*Id*. at p. 1350.) Additionally, we concluded that the facts showed an appropriate basis for emergency jurisdiction. Since the court in Florida was aware of the California proceedings and took no action in Florida for the protection of the child, we concluded that temporary emergency jurisdiction ripened into permanent jurisdiction and California became the home state. (*Id*. at p. 1351.) Here, in contrast, J.R.'s home state is Mexico and there is no evidence it has been given the opportunity to consider exercising jurisdiction.

DISPOSITION

The judgment is reversed. The case is remanded with instructions for further proceedings consistent with this opinion and adhering to the statutory requirements of the UCCJEA.

McCONNELL, P. J.

WE CONCUR:

McDONALD, J.

McINTYRE, J.

18