[No. E038464. Fourth Dist., Div. Two. Oct. 31, 2006.]

In re the Marriage of ERIC and CHRISTINE PAILLIER.
ERIC PAILLIER, Respondent, v.
CHRISTINE COPE PENCE et al., Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Leslie Ellen Shear for Appellant Christine Cope Pence.

Samuel R. Wasserson for Appellant Brian Paillier.

No appearance for Respondent.

OPINION

**RICHLI, Acting P. J.**—As if "move-away" cases were not tough enough, here we are faced with an international move-away case.

In the prototypical move-away case, Mom and Dad get divorced; Mom gets physical custody of Junior, and Dad gets visitation. Mom then decides to move far, far away, taking Junior with her. At that point, if Mom is to keep custody, Dad cannot, as a practical matter, have visitation, and vice versa. The courts of this state resolve the dispute by determining whether, once Mom moves, it would be in the best interests of Junior for Mom to keep custody while Dad loses visitation, or for Dad to keep visitation while Mom loses custody (which would be given to Dad). (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1078, 1087–1088 [12 Cal.Rptr.3d 356, 88 P.3d 81].) If the court rules in favor of Dad, Mom then must decide whether she still wants to move, given that moving will mean losing custody. Of course, a third option would be to enjoin Mom from moving. However, it has been held that this would violate Mom's federal constitutional right to travel. (*In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575, 1581–1582 [271 Cal.Rptr. 389]; cf. *In re Marriage of McGinnis* (1992) 7 Cal.App.4th 473, 480 [9 Cal.Rptr.2d 182] [order changing custody *if* mother moves leaves mother "free to travel," hence does not violate right to travel], disapproved on other grounds in *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 38, fn. 10 [51 Cal.Rptr.2d 444, 913 P.2d 473].)

The twist in this case is that it was a French court that gave Mom custody and gave Dad visitation; Mom and Junior then moved to California. Under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA or the Act) (Fam. Code, § 3400 et seq.), a California court both (1) must enforce and (2) cannot modify the French decree; it is forbidden to apply the best-interests test. However, if it enforces Mom's right to custody by allowing Junior to stay in California, it could be argued that it is failing to enforce (or even modifying) the award of visitation to Dad. On the other hand, if it enforces Dad's right to visitation by ordering Junior returned to

France, it could be argued that it is failing to enforce (or even modifying) the award of custody to Mom.

And our job is made no easier by the fact that the French court could and did enjoin Mom from moving away with Junior, for the stated purpose of protecting Dad's right to visitation.

The trial court did its best to come up with a creative solution to this dilemma. It ordered Junior returned to France, but without changing custody to Dad; instead, it *allowed* Mom to return to France with Junior, but ordered that, if she chose not to do so, she had to make other arrangements for Junior's care and schooling. However, it also ordered that, if Junior was not returned to France voluntarily, Dad would automatically obtain sole legal and physical custody. In the end, Junior was not returned to France voluntarily; the trial court issued a warrant for him and ordered him returned to Dad's custody in France.

Mom (Christine Cope Pence) and Junior (Brian Paillier) appeal. They contend that the trial court violated the UCCJEA by giving custody to Dad (Eric Paillier) and thereby modifying the French decree. They argue that the UCCJEA required only limited enforcement of the visitation award and that, in any event, the trial court did not have jurisdiction, under the UCCJEA or otherwise, to order Brian returned to France.

We agree that the trial court violated the UCCJEA by changing custody. We also agree that the UCCJEA required limited enforcement of the visitation schedule but prohibited the trial court from enforcing the other aspects of the visitation award, including the order that Christine not move away with Brian. This not only follows from the language of the UCCJEA, but also avoids any conflict between enforcing custody and enforcing visitation. Thus, we accord comity to the French decree to the extent—but *only* to the extent—that the UCCJEA requires.

I

FACTUAL AND PROCEDURAL BACKGROUND

Eric and Christine were married in California in 1992. They have one son, Brian, born in France in 1990. Brian was raised in France and has dual French and American citizenship.

In 1998, Christine and Eric initiated divorce proceedings in France. On December 7, 1999, the Tribunal de Grande Instance de Senlis (French trial court) issued the following order (French decree):

1. Christine and Eric were to have the "joint exercise of parental authority over [Brian]" ("l'exercice en commun de l'autorité parentale sur [Brian]").

2. Brian's "normal place of résidence" ("résidence habituelle") was to be with Christine (residence provision).

3. Eric was to have visitation ("droit de visite et d'hébergement") with Brian, on a specified schedule (visitation provision).

4. Christine was forbidden "to take [Brian] outside French territory for a period that might prejudice [Eric]'s exercise of his visitation right" ("de faire quitter le territoire français à [Brian] pour une durée qui nuirait à l'exercice du droit de visite et d'hébergement du père") (injunctive provision).

Christine appealed to the Cour d'Appel d'Amiens (French appellate court), asking it (among other things) to authorize her to move, with Brian, to the United States. After taking further evidence, on May 30, 2001, the French appellate court made minor modifications not relevant here; otherwise, it "[c]onfirm[ed] all the . . . disputed provisions of the judgment." It specifically confirmed "the measure limiting the child's removal from French territory . . . ."

Nevertheless, in December 2003, Christine and Brian moved to Riverside County.

On June 29, 2004, at Eric's request (as relayed through the French government), the district attorney commenced this proceeding by filing a petition, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980, 19 I.L.M. 1501 (the Hague Convention), to have Brian returned to France.

On August 23, 2004, Eric registered the French decree under the same case number as the district attorney's Hague Convention petition. He then filed a petition to enforce the French decree, along with an order to show cause, requesting an order that Brian be returned to France. On September 29, 2004, the district attorney dismissed the Hague Convention petition and thus ceased to be a party.

On December 14, 2004, pursuant to Family Code section 3410,[1] the trial court communicated with a judge of the French trial court. It then ruled that France had "exclusive and continuing" jurisdiction. It reserved the question of whether it should issue "temporary orders."

On May 6, 2005, after an evidentiary hearing, the trial court ordered that:

1. Brian was to remain in Christine's custody.

2. Christine was to arrange for Brian to attend school in France.

3. If Christine did not return to France with Brian, she was to make other arrangements for his care.

4. Brian was to return to France by July 1, 2005; if he did not do so, Eric would automatically obtain sole legal and physical custody of Brian and could ask the district attorney's child abduction unit to assist him in having Brian returned.

5. To allow Christine and/or Brian to institute proceedings in a French court, Eric was to have no contact with Brian until August 1, 2005.

The trial court explained that it was exercising its temporary emergency jurisdiction under the UCCJEA "to protect the minor child so the French court can make final orders."

On June 20, 2005, the trial court issued a written statement of decision, incorporating its previous order by reference. At the same time, however, it stayed its order through July 10, 2005. On July 7, 2005, it entered judgment in accordance with its order. On July 10, it further stayed its order through July 13.

On July 11, 2005, Christine filed a timely notice of appeal. On July 13, 2005, she filed a petition for writ of supersedeas in this court. Shortly afterward, Brian filed his own notice of appeal and joined in Christine's supersedeas petition. On July 15, 2005, we stayed the trial court's order to the

---

[1] Family Code section 3410, as relevant here, provides:

"(a) A court of this state may communicate with a court in another state concerning a proceeding arising under this part.

"(b) The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made. [¶] . . . [¶]

"(d) [A] record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record."

extent that it required Brian's return to France. On August 3, 2005, however, we denied the supersedeas petition and lifted the stay.

By August 18, 2005, Brian had not yet been returned to France. The trial court therefore ordered the district attorney to take Brian into protective custody "and return him to the custody of his father or the appropriate child welfare agency in France . . . ."

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### MOOTNESS

We pause at the threshold to consider whether this appeal is moot. In their petition for a writ of supersedeas, appellants claimed their appeal would be moot once Brian was returned to France. Eric's failure to file a respondent's brief also suggests that, at least in his opinion, we cannot give appellants any meaningful relief.

At this point and on this record, however, we cannot say the appeal is moot, for two reasons. First, the record does not show that Brian has actually been returned to France; it shows only that the trial court issued a warrant for him. Second, while appellants have argued that the French courts will disregard the orders and judgments of an American court, they have not furnished us with sufficient information to enable us to take judicial notice of this. (See Evid. Code, §§ 310, subd. (b), 452, subd. (f), 453, subd. (b), 459, subd. (a).) Moreover, even assuming this is true, Eric submitted to personal jurisdiction in this case by filing a petition to enforce the French decree. (See *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 54 [12 Cal.Rptr.3d 711].) We will not lightly presume that he would thumb his nose (or make the equivalent gallic gesture) at this court's rulings.

In any event, even if the appeal were moot, we would decide it on the merits, because it presents important issues that are capable of repetition yet likely to evade review. (See *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1 [110 Cal.Rptr.2d 412, 28 P.3d 151].)

---

*See footnote, *ante*, page 461.

IV

DISCUSSION

A.  *Statutory Background.*

██  In 1973, California adopted the Uniform Child Custody Jurisdiction Act (UCCJA). (Former Civ. Code, § 5150 et seq., added by Stats. 1973, ch. 693, § 1, pp. 1251–1259.) In 1997, a revised version of the UCCJA was promulgated as the UCCJEA. Its purpose, in addition to harmonizing inconsistent case law under the UCCJA, was to "bring[] a uniform procedure to the law of interstate enforcement" by "provid[ing] . . . a remedial process to enforce interstate child custody and visitation determinations." (9 West's U. Laws Ann. (1999) Uniform Child Custody Jurisdiction Act, Prefatory Note, p. 650.) California adopted the UCCJEA effective January 1, 2000. (Fam. Code, §§ 3400–3465, added by Stats. 1999, ch. 867, § 3.) However, "[c]ases interpreting the UCCJA may be instructive in deciding cases under the [UCCJEA], except where the two statutory schemes vary. [Citation.]" (*In re A. C.* (2005) 130 Cal.App.4th 854, 860 [30 Cal.Rptr.3d 431].)

██  The UCCJEA takes a strict "first in time" approach to jurisdiction. Basically, subject to exceptions not applicable here (Fam. Code, §§ 3422, subd. (a)(1)–(2), 3423, subds. (a) & (b), 3450, subd. (a)(1)–(2)), once the court of an appropriate state (Fam. Code, § 3421, subd. (a)) has made a "child custody determination," that court obtains "exclusive, continuing jurisdiction . . . ." (Fam. Code, § 3422, subd. (a).) The court of another state:

(a) Cannot modify the child custody determination (Fam. Code, §§ 3421, subd. (b), 3422, subd. (a), 3423, 3446, subd. (b));

(b) Must enforce the child custody determination (Fam. Code, §§ 3443, 3445, 3446, 3448, 3453); and

(c) "[M]ay issue a temporary order enforcing either:

"(1) A visitation schedule made by a court of another state.

"(2) The visitation provisions of a child custody determination of another state that does not provide for a specific visitation schedule." (Fam. Code, § 3444, subd. (a).)

■ A " '[c]hild custody determination' " is defined as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child." (Fam. Code, § 3402, subd. (c).)

■ However, a court that otherwise lacks jurisdiction to modify a child custody determination can make a temporary emergency order "if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse." (Fam. Code, § 3424, subd. (a).) Such a temporary emergency order must specify a period adequate for the person seeking relief "to obtain an order from the state having jurisdiction"; the temporary order remains in effect only until an order is obtained from the other court or the specified period expires. (Fam. Code, § 3424, subd. (c).)

■ For purposes of the Act's definitional and jurisdictional provisions (Fam. Code, §§ 3400–3430), a court of this state must "treat a foreign country as if it were a state of the United States . . . ." (Fam. Code, § 3405, subd. (a).) Moreover, "a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of [the Act] must be . . . enforced" under the Act's enforcement provisions (Fam. Code, §§ 3441–3457). (Fam. Code, § 3405, subd. (b).) The only exception is that "[a] court of this state need not apply [the UCCJEA] if the child custody law of [the] foreign country violates fundamental principles of human rights." (Fam. Code, § 3405, subd. (c).)

## B. *Application to These Facts.*

The threshold question is whether the French trial court acted "in substantial conformity with the jurisdictional standards" of the UCCJEA. (Fam. Code, § 3405, subd. (b).) Christine waived any contention that it did not by failing to challenge the French decree promptly below. (Fam. Code, § 3445, subds. (e), (f).) It is not entirely clear, however, whether Brian was similarly required to challenge the French decree in the trial court. (See Fam. Code, § 3445, subds. (a)(3), (b)(2), (d), (e).) We therefore address the point on its merits.

■ Under the UCCJEA, a state court has jurisdiction to make an initial child custody determination if it "is the home state of the child on the date of the commencement of the proceeding . . . ." (Fam. Code, § 3421, subd. (a)(1).) Here, throughout the French divorce proceedings, France was Brian's "home state" within the meaning of the UCCJEA. (Fam. Code, §§ 3402, subd. (g), 3405, subd. (a).) Thus, the French trial court did exercise jurisdiction in substantial conformity with the UCCJEA.

Appellants assert that it was the French appellate court, not the French trial court, that had exclusive, continuing jurisdiction. They argue that, unlike an American appellate court, a French appellate court takes additional evidence, reviews all factual findings de novo, and—most important—retains jurisdiction rather than remanding to the trial court. This is a distinction without a difference. The French appellate court confirmed all of the relevant provisions of the French trial court's decree. Although it could be argued that the trial court should have communicated with the French appellate court rather than the French trial court (Fam. Code, § 3410), appellants waived this argument by failing to raise it below. Otherwise, everything we might say about the French trial court is equally true of the French appellate court. Accordingly, regardless of which French court had jurisdiction, the trial court here did not.

The residence provision gave Christine what we would call physical custody of Brian. Accordingly, it was a "child custody determination" within the meaning of the UCCJEA. (Fam. Code, § 3402, subd. (c).) It follows that the trial court had no jurisdiction to modify it (Fam. Code, §§ 3423, 3446, subd. (b)), except in an appropriate temporary emergency order. (Fam. Code, § 3424, subd. (a).) Moreover, it had to enforce it (Fam. Code, §§ 3443, subd. (a), 3446, subd. (b)), unless it found that "the child custody law of [France] violates fundamental principles of human rights." (Fam. Code, § 3405, subd. (c).)

The visitation provision gave Eric visitation with Brian. Accordingly, it, too, was a child custody determination, which the trial court was required to enforce under Family Code sections 3443 and 3446. These two sections, however, must be read together with Family Code section 3444, which allows a local court to "issue a temporary order enforcing either:

"(1) A visitation schedule made by a court of another state.

"(2) The visitation provisions of a child custody determination of another state that does not provide for a specific visitation schedule." (Fam. Code, § 3444, subd. (a)(1).)

It is hornbook law that "[a] specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (*Rose v. State of California* (1942) 19 Cal.2d 713, 724 [123 P.2d 505]; accord, *People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798, 808 [123 Cal.Rptr.2d 31, 50 P.3d 743].) Thus, Family Code sections 3443 and 3446, which in general require a local court to enforce a foreign "child custody determination," are limited by Family Code section 3444, which states in particular *how* a local

court may "enforc[e]" a foreign "visitation provision[]." The doctrine of *expressio unius est exclusio alterius* also suggests that Family Code section 3444, by expressly allowing certain ways of "enforcing" a visitation provision, implicitly excludes any others.

Here, the French decree included a visitation schedule. Thus, under Family Code section 3444, subdivision (a)(1), the trial court could issue a *temporary* order, enforcing *only* this schedule; it could not enforce any *other* visitation provisions of the French decree. (Cf. Fam. Code, § 3444, subd. (a)(2).) Of course, the French decree contemplated that visitation would take place in France. Indeed, the injunctive provision could even be viewed as a visitation provision, requiring this. The trial court, however, had no jurisdiction to enforce any visitation provisions other than the visitation schedule. If Eric came to California, the trial court could have required Brian to visit him according to the schedule. It erred, however, by requiring that Brian be returned to France.

For the sake of completeness, we note that, in *In re Marriage of Zierenberg* (1992) 11 Cal.App.4th 1436 [16 Cal.Rptr.2d 238], the appellate court held that the UCCJA did authorize the trial court to enforce a Puerto Rican court's order that the mother, who had moved to California, return the child to Puerto Rico. (*Marriage of Zierenberg*, at p. 1444.) There, however, the Puerto Rican court had given the father custody (*id.* at pp. 1439–1440)—not merely, as here, visitation. The appellate court reasoned: "Under the UCCJA, custody determination means 'a court decision and court orders and instructions providing for the custody of a child.' [Citation.] [The mother]'s argument that the Puerto Rico orders commanded her actions but did not adjudicate a custody issue truly draws a distinction without a difference." (*Id.* at p. 1444, quoting former Civ. Code, § 5151, subd. (2).) Here, the return order enforced a visitation provision, not a custody provision.

The trial court purported to be acting under its temporary emergency jurisdiction. Such jurisdiction, however, exists only if "it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse." (Fam. Code, § 3424, subd. (a).) The trial court was not returning Brian to France to protect him from mistreatment or abuse; indeed, it conceded, "If asked to apply a best-interest test, I would almost certainly allow [Brian] to remain here." It explained that the only "emergency" was that Brian be "returned to France with the ability to file for change of custody." We fail to see how that was in any way necessary to protect Brian.

Moreover, if the trial court did issue a temporary emergency order, it had to "specify in the order a period . . . adequate to allow the person seeking an order to obtain an order from the state having jurisdiction . . . . The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires." (Fam. Code, § 3424, subd. (c).) It seems to have had this requirement in mind when it ordered that Eric was to have no contact with Brian until August 1, "to allow [Christine] and/or [Brian] to petition the French [c]ourt for orders." However, it was Eric who was seeking Brian's return to France, not Christine or Brian. The trial court should have provided that its order would expire by a specified date—i.e., that Brian could come back to the United States—unless *Eric* obtained an order from a French court. Instead, it set no expiration date; it put the burden on *Christine and Brian* to apply to a French court to *nullify* its order. This was not an appropriate exercise of its temporary emergency jurisdiction.

The trial court also ordered that, if Brian did not return to France by July 1, 2005, Eric would obtain sole legal and physical custody. Ultimately, Brian did not return to France by this date (as extended by the various stays). The trial court therefore expressly ordered Brian placed in Eric's custody. By doing so, it modified the French decree, in violation of the UCCJEA. Once again, although it purported to be acting under its temporary emergency jurisdiction, it did not need to give Eric full custody to protect Brian from mistreatment or abuse; also, its order had no expiration date. Hence, it erred.

Appellants also argue that, merely by ordering Brian returned to France, the trial court effectively changed custody in violation of the UCCJEA. The trial court tried to avoid this by ordering that Brian remain in Christine's custody and that she either care for him, or arrange for his care, in France. We are concerned that this could have left Brian in a kind of custodial netherworld, not residing with either his mother or his father, but rather with unidentified third parties, unless and until the French trial court ordered otherwise. We would be even more concerned if the child involved were an infant or a toddler, rather than a 14 year old who was accustomed to boarding school. However, because we have already held that the trial court erred by ordering Brian returned to France at all, and because this aspect of the order never actually went into effect, we need not decide whether it was proper.

We conclude that the trial court erred by ordering Brian returned to France and by ordering that Eric would obtain full custody of Brian if Brian did not return by July 1, 2005.

V

## DISPOSITION

The judgment is reversed. The matter is remanded with directions to deny Eric's order to show cause and to order that Brian be returned from France, unless a French court either declines jurisdiction or issues a contrary order that is entitled to enforcement under the UCCJEA. Appellants are awarded costs on appeal against Eric.

King, J., and Miller, J., concurred.