Filed 1/3/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| W.M.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>V.A.,<br><br>    Defendant and Respondent. | B287735<br><br>(Los Angeles County<br>Super. Ct. No. 17STPT00486)<br><br>**ORDER MODIFYING OPINION**<br>**[No change in judgment]** |

THE COURT*:

The opinion herein, filed on December 13, 2018, is modified as follows:

1.  On page 3, in the **FACTUAL AND LEGAL BACKGROUND**:
    a.  In the second paragraph, between "where they stayed" and "until June 7, 2017" insert: "(except for a trip to Paris in May)".
    b.  In the third paragraph, first sentence, in the fragment "while the parties were together in Belarus," replace "Belarus" with "Paris".

2.  On page 4, second paragraph, second sentence, replace "Paris" with "Mallorca".

3.  On page 15, first paragraph, second sentence, replace "Paris" with "[Mallorca]".

There is no change in the judgment.

---

*BIGELOW, P. J.          GRIMES, J.          STRATTON, J.

Filed 12/13/18 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| W.M.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>V.A.,<br><br>    Defendant and Respondent. | B287735<br><br>(Los Angeles County<br>Super. Ct. No. 17STPT00486) |

APPEAL from an order of the Superior Court of Los Angeles County.  Mark H. Epstein, Judge.  Reversed and remanded.

Walzer Melcher, Christopher C. Melcher and Alan Dershowitz for Plaintiff and Appellant.

Law Offices of Honey Kessler Amado, Honey Kessler Amado, James A. Karagianides, Ivan B. Perkins; Wasser Cooperman & Mandles, Laura A. Wasser, Jon L. Henningsen, Ashley L. Montgomery; Law Offices of Sara A. Weinstein and Sara A. Weinstein for Defendant and Respondent.

————————————————

**SUMMARY**

This is a child custody proceeding arising under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA, Fam. Code, § 3400 et seq.).[1]  The proceeding raises questions of jurisdiction as between California and Belarus.  Under the UCCJEA, a California court otherwise having jurisdiction cannot exercise its jurisdiction if a child custody proceeding has already been commenced in a court of another state "having jurisdiction substantially in conformity with" the UCCJEA.  (§ 3426, subd. (a), hereafter section 3426(a), sometimes referred to as the "simultaneous proceedings" statute.)

On June 7, 2017, a Belarus court issued a decree finding the place of residence of baby L. to be the place of residence of the baby's mother, V.A., in Belarus.  On July 20, 2017, baby L.'s father, W.M., who was unaware of the Belarus decree, filed a petition in the superior court, seeking legal and physical custody of baby L.  A few days later, the trial court granted father's ex parte request for temporary emergency orders on child custody and visitation.  Mother responded with a motion to quash the orders on the ground that California does not have jurisdiction to issue child custody orders in this case.

The trial court granted mother's motion to quash.  The court found the Belarus residency action was a child custody proceeding within the meaning of the UCCJEA, and the Belarus court had jurisdiction "substantially in conformity with" the UCCJEA.  Based on these findings, the court found it could not exercise its jurisdiction.

We conclude the trial court erred.  The UCCJEA mandates that "[b]efore a child custody determination is made," notice and

---

[1]  Further statutory citations are to the Family Code.

an opportunity to be heard must be given to all persons entitled to notice. (§ 3425, subd. (a).) Because father received no notice of the Belarus action, and because notice was not given "in a manner reasonably calculated to give actual notice" (§ 3408, subd. (a)), the Belarus court did not have jurisdiction in conformity with UCCJEA standards. The trial court therefore erred in granting mother's motion to quash and refusing to exercise its jurisdiction.

## FACTUAL AND LEGAL BACKGROUND

Mother is a professional tennis player who was born in Belarus and is a resident of Belarus and Monaco. Since the beginning of her career in 2003, she has spent much of her time travelling and competing in international tennis tournaments. Mother and father met in late 2015 in Hawaii, where father, a United States citizen, then lived. Their relationship produced baby L., who was born in Santa Monica in December 2016.

In March 2017, when baby L. was 10 weeks old, the family travelled to Belarus, where they stayed until June 7, 2017, when they travelled to Mallorca for a tennis tournament and then on to London where mother competed at Wimbledon.

On May 25, 2017, while the parties were together in Belarus, mother filed an application in the Belarus courts to determine baby L.'s place of residence. The application stated that mother's relationship with father was "in decline, the defendant scandalized, raised his voice, threatened to take away the child," and "[n]ow we have a dispute about the place of residence of the child." She asked the court to determine baby L.'s residence "by my place of residence" at an apartment in Minsk.

3

On May 29, 2017, the Belarus court issued a letter addressed to father at the Minsk apartment. (Father had a visa allowing him to be in Belarus, and the Minsk apartment was father's registered address in Belarus.) The court's May 29 letter advised father of mother's claim "regarding determination of place of residence of [baby L.]" and that a hearing would be held on June 7, 2017.

On June 7, 2017, the Belarus court held a hearing. Neither mother nor father attended, having left early that morning for Paris. Baby L.'s maternal grandmother, A.V.A., appeared at the hearing for mother, and no one appeared for father. (Father claimed he was completely unaware of the hearing, while mother says she told father about it. The trial court credited father's testimony, and concluded father "was unaware of the application, the hearing, or the decree until August 2017, when it came to light in the California action.")

The June 7, 2017 Belarus decree found that plaintiff (mother) "takes care of the child herself from the moment of his birth"; "in spite of the itinerant nature of work, the child is always with her"; and in addition, A.V.A. "helps her to care for her child." The court found mother was a Belarus citizen, had a permanent place of residence in Minsk, and the child was documented by a Belarusian passport, registered at the mother's place of residence. The court found defendant (father) owned no housing accommodation himself, and was registered at mother's place of residence. The court found mother and father "have a dispute about the place of residence of the child." The court decided "[t]o determine the place of residence of [baby L.], born [in December 2016], by the place of residence of his mother, at the address [in Minsk]."

4

In July 2017, while in London, mother and father had "an awful disagreement" and ended their relationship. Father returned to the United States on July 12, 2017, and mother travelled to the United States with baby L. a few days later, to prepare and train for the U.S. Open in August. (Mother owns a single-family home in Manhattan Beach. She has a P1 visa for athletes that authorizes her presence in the United States to compete and for other related activities; she is not a permanent resident.)

On July 20, 2017, father filed his petition in Los Angeles, and on July 26, 2017, he sought temporary emergency orders on child custody and visitation. That day, mother responded by arguing the court did not have jurisdiction over child custody because neither of the parties (nor baby L.) resided in California, and all issues should be determined in Belarus. The court issued temporary orders that day, preventing the parties from removing baby L. from Los Angeles County, requiring surrender of baby L.'s passports, and giving father temporary physical custody with visitation for mother.

On July 28, 2017, mother filed her motion to quash, stating she had filed a court action in Belarus in May 2017; the court had already determined, on June 7, 2017, that baby L. was a resident of Belarus; and mother was "in the process of initiating custody proceedings there."

Also on July 28, 2017, mother filed a statement of claim in the Belarus court (referred to as the visitation action), asking the court to allow father to visit his son once a month at the address of the baby's residence in Belarus in the presence of mother.

On July 31, 2017, the Belarus court issued a letter addressed to father at the Minsk apartment, notifying him of

mother's claim "regarding definition of order of communication with the child," and that a hearing would be held on August 3, 2017.

On August 3, 2017, the Belarus court held a hearing and decided that father could "communicate[] with [baby L.] once a month in the presence of [mother] at the address of [baby L.'s] residence" in Minsk, or in any other place as agreed by the parties.

On August 9, 2017, the California court made various orders setting discovery, briefing and hearing schedules on the jurisdiction issue, and temporary orders that alternated physical custody of baby L. between mother and father (with security guard monitors outside mother's home during nights when she had custody of baby L.).

On August 15, 2017, the parties stipulated to a temporary order detailing the terms of their shared physical custody of baby L. and various child abduction prevention orders, including security guard monitoring and surrender of baby L.'s passports. This order was renewed several times during the litigation.

On January 12, 2018, the trial court granted mother's motion to quash. The trial court found, among other things, the Belarus residency action was a child custody proceeding, and the Belarus court had jurisdiction "substantially in conformity with" the UCCJEA. The court vacated its orders concerning mother's right to travel out of the jurisdiction with baby L. and other orders restraining mother and baby L., but stayed the effect of its

order for three weeks, allowing father time to seek an additional stay from this court.[2]

Father filed a timely notice of appeal, and then a petition for writ of supersedeas. We granted the writ (over a dissent), staying the trial court's order pending resolution of the appeal. Our order, however, vested the superior court with jurisdiction to grant any subsequent temporary custody, visitation, or support orders, including travel orders for the removal of baby L. from California for domestic or international travel.

---

[2]    The court also ruled on many other contested issues. None of these has been challenged on appeal. Thus, the court found Belarus is a "state" for purposes of the UCCJEA (§ 3405, subd. (a)), and its child custody law does not violate fundamental principles of human rights (§ 3405, subd. (c)). Neither California nor Belarus is the "home state" of baby L. (§ 3421, subd. (a)(1).) Both California and Belarus meet the jurisdictional standards of section 3421, subdivision (a)(2) (the child and at least one parent have a significant connection with the state, and substantial evidence is available in the state concerning the child's care and protection). And, although the court concluded Belarus had jurisdiction substantially in conformity with the UCCJEA, the court declined to enforce the Belarus decrees, because they were both made without giving father notice and an opportunity to be heard. The court also ruled on the alternative issue mother raised of inconvenient forum, "in the event that its jurisdictional determination is reversed." On the forum issue, the court concluded that "on balance it would exercise its jurisdiction." The factor tipping the scales was California's procedural safeguards ensuring "that both sides are heard, and therefore that the best decision is ultimately made."

**DISCUSSION**

We begin with a description of the statutory background and pertinent provisions of the UCCJEA, and then turn to its application in this case.

**1.    The UCCJEA**

The statutory background of the UCCJEA is described in *In re Marriage of Paillier* (2006) 144 Cal.App.4th 461, 469 (*Paillier*). In 1973, California adopted a predecessor statute.[3] (*Ibid.*) In 1997, the National Conference of Commissioners on Uniform State Laws approved a revised version, the UCCJEA. (10 Witkin, Summary of Cal. Law (11th ed. 2017) Parent & Child, § 308, p. 402.) California adopted the UCCJEA in 1999. (*Ibid.*) "Its purpose, in addition to harmonizing inconsistent case law under the [predecessor act], was to 'bring[] a uniform procedure to the law of interstate enforcement' by 'provid[ing] . . . a remedial process to enforce interstate child custody and visitation determinations.' " (*Paillier,* at p. 469.)

"The UCCJEA takes a strict 'first in time' approach to jurisdiction." (*Paillier, supra,* 144 Cal.App.4th at p. 469.) In general, once the court of an "appropriate state" – one having jurisdiction under section 3421, subdivision (a) – has made a child custody determination, "that court obtains 'exclusive, continuing jurisdiction . . . .' " (*Paillier,* at p. 469.)

Under section 3421, a court "has jurisdiction to make an initial child custody determination" if it is the child's home state (*id.*, subd. (a)(1)). If there is no home state (as in this case), the court has jurisdiction to make an initial child custody

---

[3]    Civil Code former section 5150 et seq., added by Statutes 1973, chapter 693, section 1, pages 1251-1259.

determination if the child and at least one parent "have a significant connection with this state other than mere physical presence," and "[s]ubstantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." (§ 3421, subd. (a)(2)(A)&(B).) And, under section 3425, "[b]efore a child custody determination is made under [the UCCJEA], notice and an opportunity to be heard in accordance with the standards of Section 3408 must be given to all persons entitled to notice . . . ."[4] (§ 3425, subd. (a), hereafter section 3425(a).)

The notice required for the exercise of jurisdiction when a person is outside the state "may be given in a manner prescribed . . . by the law of the state in which the service is made. Notice must be given in a manner reasonably calculated to give actual notice but may be by publication if other means are not effective." (§ 3408, subd. (a), hereafter section 3408(a).)[5]

California courts must treat a foreign country as if it were a state for purposes of applying the general and jurisdictional provisions (§§ 3400-3430) of the UCCJEA. (§ 3405, subd. (a).) A California court need not apply the UCCJEA if the child custody law of a foreign country violates fundamental principles of human rights. (§ 3405, subd. (c).) With that exception, "a child custody determination made in a foreign country under factual

---

[4] The UCCJEA "does not govern the enforceability of a child custody determination made without notice or an opportunity to be heard." (§ 3425, subd. (b).)

[5] "Proof of service may be made in the manner prescribed . . . by the law of the state in which the service is made." (§ 3408, subd. (b).)

9

circumstances in substantial conformity with the jurisdictional standards of [the UCCJEA] must be recognized and enforced under Chapter 3 [enforcement]."[6] (*Id.*, subd. (b).)

Finally, a California court "may not exercise its jurisdiction under this chapter [§§ 3421-3430] if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with [the UCCJEA] . . . ." (§ 3426(a).)

**2.    This Case**

We preface our discussion with some observations that may facilitate an understanding of the error that undermined the trial court's otherwise thorough and lucid resolution of the many issues and arguments the parties raised in this case.

The flaw in the trial court's analysis was the failure to consider section 3425 – the *jurisdictional* provision requiring notice and an opportunity to be heard "[*b*]*efore* a child custody determination is made under [the UCCJEA]." (§ 3425(a), italics added.)  Instead, the trial court apparently concluded that so long as the Belarus court "ha[d] jurisdiction to make an initial child custody determination" under the section 3421 standards – that is, "a significant connection" of the child and a parent to Belarus, and substantial evidence in Belarus concerning the child – then

---

**6**      Under section 3443, a California court "shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with [the UCCJEA] or the determination was made under factual circumstances meeting the jurisdictional standards of [the UCCJEA] . . . ." (*Id.*, subd. (a).)

no more was required to conclude that Belarus "ha[d] jurisdiction substantially in conformity with [the UCCJEA]." (§ 3426(a).)

As we explain further *post*, that is not correct. Adequate notice is always a factor fundamental to jurisdiction, and custody proceedings under the UCCJEA are no exception to that principle.

### a. The standard of review

The role of the appellate court, "once the [trial] court has evaluated witnesses' credibility, resolved conflicts in the evidence and made its findings, is to ensure that the provisions of the UCCJEA have been properly interpreted and that substantial evidence supports the factual basis for the [trial] court's determination whether California may properly exercise subject matter jurisdiction in the case." (*In re Aiden L.* (2017) 16 Cal.App.5th 508, 520.) Accordingly, we review matters of statutory construction de novo, and review the trial court's factual findings for substantial evidence.

### b. Contentions and conclusions

Father raises only two issues on appeal: whether the Belarus residency action was a child custody proceeding as defined in the UCCJEA, and whether Belarus had jurisdiction substantially in conformity with the UCCJEA. We need not examine the first point, because the jurisdictional point is dispositive. Belarus did not have jurisdiction to make a child custody determination because it did not give father "notice and an opportunity to be heard" (§ 3425(a)) in a manner "reasonably calculated to give actual notice" (§ 3408(a)).

### i. The law on jurisdiction

The fundamental principle here is simple. A court cannot make a child custody determination without first having the

11

jurisdiction to do so. That is so generally, and it is so under the UCCJEA. There is no authority to the contrary.

Jurisdiction does not consist only of so-called "subject matter" jurisdiction. Venerable authorities explain that, unless a defendant submits to the court's jurisdiction, "a court's power, i.e., jurisdiction to render judgment in an action, requires . . . jurisdiction of the subject matter of the action, territorial jurisdiction of the action, and adequate notice to the defendant." (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 7, p. 580, citing Rest.2d, Judgments, § 1; cf. *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1286 ["A judgment entered without notice is void and can be attacked at any time."].)

The same principles govern under the UCCJEA: "Even though the court has jurisdiction of the subject matter under the traditional bases (domicile or physical presence [citation]) or under the alternative bases prescribed by the [UCCJEA], jurisdiction of the parties depends upon sufficient notice. A custody proceeding is *in personam*, not in rem; hence, the process requirements of personal actions apply, *and notice of the proceeding must be given to the parents*." (2 Witkin, Cal. Procedure, *supra*, § 279, p. 886, italics added.) Further: "[A] parent's right to notice of custody proceedings affecting his or her child is constitutionally compelled, and a custody order made in the absence of such notice is invalid." (2 Cal. Fam. Law Prac. & Proc. (2d ed. 2017) § 32.40[1].)

The principle is likewise clear from the UCCJEA on its face: "Before a child custody determination is made under [the UCCJEA], notice and an opportunity to be heard in accordance with the standards of Section 3408 must be given to all persons entitled to notice . . . ." (§ 3425(a).)

12

### ii.    The facts in this case

That brings us to the factual question in this case:  Did the Belarus court give father notice and an opportunity to be heard at the June 7, 2017, hearing in accordance with the standards of section 3408?  Those standards require that notice be given to father "in a manner reasonably calculated to give actual notice." (§ 3408(a).)

On this point, the trial court – applying the section 3408 standard and recognizing that actual notice is not required – expressly stated that it would not enforce the June 7, 2017 decree.  After first stating it would not enforce the Belarus court's August 3, 2017 visitation decree ("[t]he process went from application [mailed July 31] to judgment [August 3] in record-breaking time"), the court stated:

"The Court also will not enforce the June 7, 2017 decree either, although the question is a closer one. . . .  [I]t remains the case that the order was made without notice or an opportunity to be heard."

Substantial evidence supports the trial court's conclusion that the June 7, 2017 decree was made without notice to father. That evidence consists of father's testimony that he had no notice of the June 7, 2017 hearing, and the testimony of father's expert on Belarusian law, Dr. Aliaksandr Danilevich.  The trial court stated that it "credit[ed] [father's] testimony that he had no notice and Dr. Danilevich's testimony concerning Belarus law." The court described Dr. Danilevich's testimony:

"Dr. Danilevich testified that under Belarus law, notice is typically made by registered mail (sent by the court) with a return receipt."  While that manner of notice was "certainly reasonable," the trial court found that "[t]he problem here is that

13

there is absolutely no evidence that any return receipt was submitted for either application [referring to the applications resulting in the June 7 and the August 3 decrees]." And: "Dr. Danilevich also testified that where the registered mail option was uncertain, the court had the ability to give notice by email, fax, or other means. However, again, there is no evidence that the Belarus court made any attempt to do so. And, while it is true that the Belarus court likely did not have [father's] email address, [mother] had it. She could have provided that information to the Belarus court, especially given that she knew for a certainty that the mailed notice addressed to an apartment in Minsk where [father] had never actually lived would never reach [father]."[7]

---

[7] While the trial court did not specifically cite it, Dr. Danilevich also testified that under Belarus law, the petitioner in a case "has to provide the court with all contacting [data], all possible contacting data, phone number, e-mails, all the – of the party to give to the court the possibility [to] contact him or her in any way. Different ways." Mother's expert, Dr. Alena Babkina, testified to the contrary, that under Belarus law mother had no obligation to provide the court with father's e-mail address, and she complied with her duty to provide information about father by providing his official address. But as mother herself tells us, the disputed meaning of a foreign law is a question of fact for determination by the trial court. (See, e.g., *Estate of Schluttig* (1950) 36 Cal.2d 416, 424 [where "the issue to be determined involved questions as to the existence, translation, interpretation and effect of [foreign] laws," and the trial court heard "highly conflicting testimony by experts upon the laws of those countries and their application under given circumstances," the determination of the issue "was one of fact, and the finding of the trial court, if supported by substantial evidence, will not be disturbed on appeal"].)

14

The trial court also described father's testimony. Father stated, among other things, "that he had no idea there was going to be a hearing on June 7, 2017, which was the day that he and [mother] left Belarus for Paris."[8] The court stated it "believes [father] when he states that he would not have left the country on the same day as a court hearing involving his son was going to go forward."

Mother recognizes that section 3425(a) "requires notice and opportunity to be heard before a court may exercise its jurisdiction to make a custody order." She does not dispute that father and Dr. Danilevich testified as described by the trial court. Nor does she suggest that their testimony is not substantial evidence father had no notice of the June 7, 2017 proceeding. Mother also acknowledges that a determination of "substantial conformity" with the UCCJEA "requires analyzing the facts and circumstances under which the sister-state [here, Belarus] exercised jurisdiction."

Despite her understanding of these principles, mother contends that "Belarus procedures satisfy the notice requirements for an exercise of jurisdiction," and the trial court determined that "the notice procedures under Belarusian law" were reasonably calculated to give actual notice. Neither claim has merit.

---

[8] The court also described father's testimony as stating "that he never got the notice in the mail at the apartment in Minsk," that he was "given a different, and innocuous reason" for the fact that baby L.'s maternal grandmother (who attended the hearing for mother) was staying behind in Belarus, and that father "produced a contemporaneous email that supports his version of events."

15

The fundamental flaw in mother's analysis is her reliance on Belarus procedures, rather than on whether and how the procedures were employed in the particular case. Yes, the trial court found that Belarus procedures could *theoretically* be applied so that notice is given "in a manner reasonably calculated to give actual notice." (§ 3408(a).) But theory does not satisfy section 3408. As the trial court put it, "as a theoretical matter," both of the notice methods to which Dr. Danilevich and Dr. Babkina testified "at least potentially on their face may satisfy section 3408. But that does not answer the question when applied to this specific case." We agree, it does not.

Section 3408 expressly states that notice "*must be given* in a manner reasonably calculated to give actual notice." (§ 3408(a), italics added.) The trial court found that notice compliant with section 3408 standards was not given. The court quoted the section 3408 standards at the beginning of its notice discussion, and in the end, after again referring to section 3408, stated that "it remains the case that the [June 7, 2017] order was made without notice or an opportunity to be heard." That being so, the Belarus court had no jurisdiction to make a child custody determination.

We note two further points. Mother tells us that jurisdiction is "a separate concept from enforcement," so while notice "was insufficient for enforcement purposes," there were "sufficient standards for due process under the Belarusian legal system" for jurisdictional purposes.[9] This is just another way of

---

**9**     The trial court also distinguished between the jurisdictional provisions of the statute (ch. 2) and its enforcement provisions (ch. 3), stating that "the additional notice requirements are found *exclusively* in the chapter dealing with

16

saying that if notice procedures are theoretically adequate, a court may exercise jurisdiction in a particular case despite a lack of notice.  As we see it, that is not correct.  Moreover, basic principles of statutory construction do not allow us to construe provisions of the same statute without regard to the statute as a whole.  "[A]ll parts of a statute should be read together and construed in a manner that gives effect to each, yet does not lead to disharmony with the others."  (*City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468.)  To suggest that a court may make a child custody determination under lesser notice standards than those required for enforcement of a sister state's custody determination would not comport with this principle of statutory construction.

Finally, mother relies heavily on *AO Alfa-Bank v. Yakovlev* (2018) 21 Cal.App.5th 189 (*AO Alfa-Bank*).  That case states the principle that "due process does not require actual notice; it requires only a method of service 'reasonably calculated' to impart actual notice *under the circumstances of the case*."  (*Id.* at p. 195, italics added.)  That is undoubtedly so; indeed, that principle is the same principle stated in section 3408, and the trial court here recognized and applied that principle.  *AO Alfa-Bank* – which is not a child custody case – does nothing to advance mother's position.

In *AO Alfa-Bank*, the parties, in the surety agreement that generated the lawsuit, agreed that notices would be sent to the

---

the enforcement of a foreign decree."  That is simply not so – the section 3425 notice requirement is a chapter 2 jurisdictional provision and an express precondition for making a child custody determination under the UCCJEA.

17

defendant at his residence in Russia (the same address as the address he registered with the government), and he was contractually obligated to notify the plaintiff of any new address within five days. He did not do so before (or after) he fled the country to seek asylum in the United States, and the plaintiff did not know he had fled the country until years after it filed suit. (*AO Alfa-Bank, supra,* 21 Cal.App.5th at pp. 195-196.) The Russian court file showed, among other things, two summons letters in succeeding months, as well as two telegrams sent from the court to the defendant's Moscow residence in later months. (*Id.* at pp. 204-205.) The court found that "[u]nder *these* circumstances, we conclude the procedure used was reasonably calculated to apprise [the defendant] of the pendency of the action and afford him an opportunity to respond." (*Id.* at p. 209, italics in original; *id.* at p. 210 ["Critical to our conclusion is the fact that under the surety agreement, [the defendant] was required to keep his official registered address up to date."].) In short, under *those* circumstances, notice *was* reasonably calculated to give actual notice. (*Id.* at p. 202.)

There is no similarity with the circumstances in this case. Moreover, *AO Alfa-Bank* demonstrates the proper approach to the issue: "We first consider whether the evidence establishes proper service under Russian law. [Citations.] If it does, we then consider whether such service was reasonably calculated, under all the circumstances, to impart actual notice." (*AO Alfa-Bank, supra,* 21 Cal.App.5th at p. 203.) Here, substantial evidence clearly supports the trial court's finding that the notice standards in section 3408 of the UCCJEA were not met.

Because the Belarus court did not provide notice to father consistent with the standards specified in section 3408, and

18

because notice is required before a court may make a child custody determination (§ 3425(a)), the Belarus court did not "hav[e] jurisdiction substantially in conformity with [the UCCJEA]" under section 3426(a).  Accordingly, the California court has "first in time" jurisdiction, and the trial court erred in ceding jurisdiction to the Belarus court under section 3426(a).  Mother's motion to quash the trial court's orders on the ground that California does not have jurisdiction to issue child custody orders in this case should have been denied.

## DISPOSITION

The order refusing to exercise jurisdiction and granting mother's motion to quash is reversed, and the matter is remanded to the trial court for further proceedings.  Father shall recover his costs on appeal.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


STRATTON, J.


19